# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

Nº 07-CV-4114 (JFB)

———————————————

CARLOS CELLERI,

Petitioner,

VERSUS

LUIS MARSHALL, SUPERINTENDENT, SING SING CORRECTIONAL FACILITY,

Respondent.

———————————————

**MEMORANDUM AND ORDER**
May 6, 2009

———————————————

JOSEPH F. BIANCO, District Judge:

Carlos Celleri ("petitioner") petitions this Court *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in state court. Petitioner was convicted in a judgment rendered on October 21, 2002, following a jury trial in the Supreme Court of the State of New York, Suffolk County (the "trial court"). Petition was convicted of (1) rape in the first degree; (2) burglary in the second degree; and (3) sexual abuse in the first degree. He was sentenced to a term of fifteen years' imprisonment plus five years post-release supervision.

Petitioner challenges his conviction on the following grounds: (1) the trial court failed to suppress petitioner's statements obtained through *Miranda* violations and physical force, thereby violating petitioner's right against self-incrimination; (2) the trial court erred in permitting the prosecution to raise petitioner's prior convictions should petitioner testify, denying him due process of law; (3) the trial court improperly limited petitioner's cross-examination of the complainant in violation of his right to confrontation; (4) the trial court made openly disparaging remarks to defense counsel, thereby prejudicing the jury and depriving petitioner of a fair trial; and (5) the prosecution improperly vouched for the veracity of the alleged victim, depriving petitioner of a fair trial.

For the reasons set forth below, Celleri's petition for a writ of habeas corpus is denied in its entirety.

## I. BACKGROUND

The Court has adduced the following facts from the instant petition and underlying state court record.

### A. Pre-Trial Proceedings

Petitioner was charged with rape in the first degree (N.Y. Penal Law § 130.35[1]), burglary in the second degree (N.Y. Penal Law § 140.25[2]), and sexual abuse in the first degree (N.Y. Penal Law § 130.65[1]).

At a pre-trial *Huntley* hearing, conducted in response to petitioner's motion to suppress prior oral and written admissions,[1] the trial court assessed the voluntariness of statements petitioner made to law enforcement officers at various points during petitioner's arrest and custody. The trial court suppressed statements made by petitioner at the police precinct prior to the administration of *Miranda* warnings, but admitted those statements given thereafter.[2] Petitioner subsequently moved for reargument. The trial court granted petitioner's motion, but upon reargument the trial court upheld its earlier ruling.[3]

Before and during the trial, the court also conducted a *Sandoval* hearing[4] to determine

which of petitioner's prior crimes, if any, would be admissible for purposes of impeachment should petitioner choose to testify. The prosecutor sought to introduce three convictions for contempt of an order of protection, one conviction for reckless endangerment in the second degree, and one conviction for harassment. All five convictions involved criminal conduct targeting either petitioner's ex-wife or ex-girlfriend. The trial court ruled that all convictions, with the exception of the one for harassment, were admissible. (T.(3) at 2-6.)[5]

### B. The Trial

#### 1. The Prosecution's Case

On the morning of December 13, 2001, Andrea Rodriguez (the "complainant") was sleeping alone in the room that she and her mother rented from petitioner. (T.(1) at 56.) She was awoken by the sound of petitioner unlocking and opening her door. (T.(1) at 55, 58.) The complainant rose from bed and attempted to keep petitioner from entering her room. (T.(1) at 59.) A physical struggle ensued, during which petitioner forcibly pushed the complainant on to her bed. (T.(1) at 60, 165.) Despite her resistance and screams for help, petitioner successfully

---

[1] A *Huntley* hearing is a hearing to determine the admissibility of a statement made by a criminal defendant. *See Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998); *People v. Huntley*, 15 N.Y.2d 72 (N.Y. 1965).

[2] Decision rendered on May 8, 2002.

[3] Decision rendered on August 23, 2002.

[4] As the Second Circuit has noted, "'[i]n New York state courts a defendant may request a preliminary hearing, known as a *Sandoval* hearing,

to determine whether, if he elects to testify, his prior criminal record may be used to impeach his credibility.'" *Greiner v. Wells*, 417 F.3d 305, 310 n.1 (2d Cir. 2005) (quoting *Norde v. Keane*, 294 F.3d 401, n.1 (2d Cir. 2002)); *People v. Sandoval*, 34 N.Y.2d 371 (N.Y. 1974).

[5] The trial record is compiled in four volumes: September 11, 2002 (hereinafter "T.(1)"); September 12, 2002 (hereinafter "T.(2)"); September 13, 2002 (hereinafter "T.(3)"); and September 16-20, 2002 (hereinafter "T.(4)").

immobilized the complainant on her bed by delivering multiple punches to her face and violently strangling her neck. (T.(1) at 64-70, 72-73, 170; T.(2) at 44-46.) From there, petitioner forcibly removed her pants and underwear (T.(1) at 74) and partially ripped her shirt. (T.(1) at 78-79.) After inappropriately touching and kissing various parts of complainant's body (T.(1) at 79-83; T.(2) at 67) and masturbating for a time, (T.(1) at 81; T.(2) at 70), the petitioner proceeded to rape the complainant through vaginal sexual intercourse. (T.(1) at 82-84.) He refrained from ejaculating during the rape, but did so after masturbating again while on top of her. (T.(1) at 85-87.) After putting on his boxer shorts, petitioner threatened the complainant with deportation and death if she called the police, and then left the room. (T.(1) at 88; T.(2) at 81.) The complainant left the room and visited a fellow tenant downstairs, (T.(1) at 89-90; T.(3) at 95-96), to whom she recounted the rape perpetrated by petitioner. (T.(1) at 90; T.(3) at 50-51.) As a result of petitioner's sexual assault, the complainant suffered extensive physical injury, including hemorrhaging in the right eye, multiple contusions on her face, petechia from the neck up, (T.(1) at 96-97; T.(2) at 123; T.(3) at 48-50, 79, 94-95, 116-17; T.(4) at 42-43, 50-54, 196, 201-03, 206-09, 217-22), and observable injury to her genitals. (T.(4) at 229-30, 233, 235.) Forensic evidence of sperm and semen were found in the proximity of complainant's bed, and traces of saliva were found on her left breast. (T.(4) at 288-89, 295.) DNA analysis matched the sperm, semen, and saliva recovered to that of the petitioner. (T.(4) at 602-21.) In addition, the complainant's DNA was found on petitioner's boxer shorts. (T.(4) at 602-21.)

### 2. The Petitioner's Case

Petitioner did not testify at trial, but indicated to law enforcement officers while in custody that he and the complainant enjoyed a "secret relationship" and that their sexual intercourse was consensual. (H.(1) at 13; H.(2) at 29; T.(4) at 454-57.)[6]

### 3. Motion for Mistrial and Recusal

During trial, defense counsel moved for mistrial and recusal, arguing that the judge had disparaged her in the presence of the jury, thereby prejudicing her credibility. (T.(4) at 384-86.) Counsel's motions were denied.

### 4. The Verdict and Sentence

On September 20, 2002, petitioner was convicted of rape in the first degree (N.Y. Penal Law § 130.35[1]), burglary in the second degree (N.Y. Penal Law § 140.25[2]), and sexual abuse in the first degree (N.Y. Penal Law § 130.65[1]). The trial judge sentenced petitioner to fifteen years' imprisonment[7] and five years' post-release supervision.[8]

### C. State Appeals/Post-Judgment Motions

Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, Second Department (hereinafter, the

---

[6] The *Huntley* hearing record is compiled in four volumes: March 28, 2002 (hereinafter "H.(1)"); April 11, 2002 (hereinafter "H.(2)"); April 18, 2002 (hereinafter "H.(3)"); and April 19, 2002 (hereinafter "H.(4)").

[7] Sentenced rendered on October 21, 2002.

[8] Sentenced rendered on October 31, 2002.

"Appellate Division") arguing that: (1) the trial court erred in denying his motion to suppress inculpatory admissions because his Fifth Amendment right against self incrimination was violated; (2) the trial court erred in admitting his prior crimes which deterred him from testifying, thereby depriving the jury of material evidence; (3) the trial court erred in limiting his cross-examination; (4) he was denied his fundamental right to a fair trial because the trial judge's sarcastic remarks in the jury's presence prejudiced petitioner; and (5) his convictions should be reversed because the prosecutor improperly vouched for the veracity of the alleged victim. On May 9, 2006, the Appellate Division agreed with petitioner on the first ground to the extent it found error by the trial court, noting that the admission of petitioner's post-Mirandized statements was a violation of New York state law as interpreted by *People v. Chapple*, 38 N.Y.2d 112 (N.Y. 1975), but then ruled that the mistake was harmless error. *People v. Celleri*, 814 N.Y.S.2d 270 (N.Y. App. Div. 2006). Moreover, the court rejected petitioner's second and fourth grounds on the merits and found his third and fifth grounds to be "unpreserved." Petitioner filed leave to appeal to the Court of Appeals on his first, second and fourth grounds for appeal. On July 26, 2006, the Court of Appeals denied leave to appeal from the Appellate Division's order. *People v. Celleri*, 7 N.Y.3d 786 (N.Y. 2006).

On October 22, 2007, petitioner filed a § 440.10 motion for state collateral review in the trial court, arguing claims analogous to the third and fifth grounds for his appeal to the Appellate Division. On December 10, 2007, petitioner's § 440.10 motion was denied.

### D. The Instant Petition

On September 27, 2007, petitioner filed the instant petition before this Court, raising the five claims he had submitted on direct appeal to the Appellate Division. This Court issued an Order to Show Cause on October 3, 2007. A response in opposition was filed on December 14, 2007, to which petitioner filed a reply on April 11, 2008. This matter is fully submitted.

## II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a grant of a writ of habeas corpus, a federal court must apply the standards of review mandated by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. The statute provides, in relevant part, that:

> (d) [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Williams*, 529 U.S. at 413; *see also Earley*, 451 F.3d at 74.

AEDPA establishes a deferential standard of review wherein "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be *unreasonable*." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411) (emphasis added). The Second Circuit has noted that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the

mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)); *accord Earley*, 451 F.3d at 74.

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *see also Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam); *Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 277 (2d Cir. 2003). Federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984); *DiGuglielmo v. Smith*, 366 F.3d 130, 136-37 (2d Cir. 2004); *Lydon v. Kuhlman*, 62 F. Supp. 2d 974, 977-78 (E.D.N.Y. 1999).

## III. DISCUSSION

### A. The Exhaustion Requirement

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, see *Lawrence v. Florida*, 549 U.S. 327, 332 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

In the instant case, the Court finds that petitioner's first, second, and fourth claims – regarding claims of a violation of his right against self-incrimination, trial court error in admitting prior crimes, and deprivation of a

fair trial due to judicial bias, respectively – are properly exhausted and ripe for *habeas* review. However, petitioner's failure to seek leave to appeal his third and fifth claims to the Court of Appeals – regarding a violation of his confrontation right and deprivation of a fair trial due to prosecutorial misconduct, respectively – renders those claims unexhausted.[9] Petitioner's argument that he did not fully exhaust these claims because the Appellate Division determined that they were unpreserved is without merit. In addition, contrary to petitioner's contention, petitioner's subsequent § 440.10 motion for collateral review of these claims does not cure his failure to exhaust where he did not appeal that denial. *See, e.g., Rodriguez v. Ercole*, No. 08 Civ. 2074 (CM) (KNF), 2008 WL 4701043, at *3 (S.D.N.Y. Oct. 24, 2008) (claim was unexhausted because of failure to appeal denial of Section 440 motion). As a result, the Court finds the instant *habeas* petition to be "mixed."

In such a situation, where claims in a federal habeas petition have not been exhausted, the federal court may determine that no available procedures remain in state court by which a petitioner may exhaust the claims. *See* 28 U.S.C. § 2254(b) (petition shall not be granted unless exhaustion has occurred or "there is an absence of available state corrective process"); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). "In such a case the habeas court theoretically has the power to deem the claim exhausted." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)). However, by finding that a claim can no longer be exhausted, the federal court is subsequently required to deem the claim procedurally defaulted. *Id.* Here, petitioner's third and fifth claims are irreparably unexhausted, as the filing deadlines for an appeal have long since expired. The Court thus proceeds with the appropriate procedural default analysis of these claims and concludes that, although the claims are deemed exhausted, they are procedurally barred.

B. Procedural Default

A petitioner's federal claims may be procedurally barred from habeas corpus review if they were decided at the state level on "adequate and independent" procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999). To be independent, the "state court must actually have relied on the

---

[9] Respondent also argues that petitioner's fourth claim of improper judicial intervention is unexhausted because petitioner did not specifically allege a constitutional violation when he sought leave to appeal to the Court of Appeals. Instead, petitioner sought leave for this claim on the basis of the trial court's denial of petitioner's motion for mistrial and recusal based on the judge's disparaging comments. The Second Circuit has ruled that "a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution," if, for example, there is an "assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or an] allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 194 (2d Cir. 1982). The Court finds that a motion for mistrial and recusal based on the trial judge's alleged disparaging behavior towards defense counsel in the presence of the jury reasonably brings into question petitioner's constitutional right to a fair trial. Thus, the Court deems petitioner's fourth claim properly exhausted.

procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261 (1989), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id.* at 263 (internal quotations omitted). Generally, the Second Circuit has deferred to state findings of procedural default as long as they are supported by a "fair and substantial basis" in state law. *Garcia*, 188 F.3d at 78 (citing *Arce v. Smith*, 889 F.2d 1271, 1273 (2d Cir. 1989)). The purpose of the procedural bar rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and maintain its judicial procedures as it sees fit. *Coleman*, 501 U.S. at 730-33. Thus, a federal habeas court may not review a procedurally barred claim on the merits unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Id.* at 750. A fundamental miscarriage of justice only occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

On direct appeal, the Appellate Division explicitly determined that petitioner's third and fifth grounds for appeal were "unpreserved for appellate review," *People v. Celleri*, 29 A.D.3d 707, 709 (N.Y. App. Div. 2006), presumably because New York's contemporaneous objection rule preserves for review only those questions of law as to which "a protest . . . was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. C.L.S. C.P.L. § 470.05. Petitioner's third claim asserts that

the trial court violated his Sixth Amendment right to confrontation by limiting his cross-examination of the complainant as to her social relationships with other men. At one point during cross-examination, petitioner suggested that the complainant enjoyed a social relationship with a work-supervisor. However, upon the prosecutor's successful objection, petitioner failed to challenge the adverse ruling. Petitioner's fifth claim asserts that he was deprived of a fair trial because the prosecutor improperly vouched for the veracity of the complainant before the jury. Petitioner specifically points to four distinct statements made during the prosecutor's summation. Yet, here also, petitioner failed to raise contemporaneous objections at trial.

The Second Circuit has repeatedly recognized the validity of § 470.05, noting that "[i]f a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with . . . a 'contemporaneous objection' rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review." *Peterson v. Scully*, 896 F.2d 661, 663 (2d Cir. 1990) (internal citation omitted). Furthermore, the Second Circuit has "observed and deferred to New York's consistent application of its contemporaneous objection rules." *Garcia*, 188 F.3d at 79; *see also Bossett v. Walker*, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (respecting state court's application of § 470.05(2) as an adequate bar to federal habeas review); *Fernandez v. Leonardo*, 931 F.2d 214, 216 (2d Cir. 1991) (noting that failure to make objection at trial constitutes adequate procedural default under § 470.05(2)).

Therefore, the Court finds that petitioner's third and fifth claims are procedurally barred

from federal habeas review.[10] Petitioner offers no explanation for his failure to preserve these claims despite ample opportunity to raise objections at trial. Moreover, in light of the overwhelming evidence of petitioner's guilt, the Court does not find that the alleged errors prejudiced petitioner by working to his "actual and substantial disadvantage infecting his entire trial with error of constitutional dimensions."[11] *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (quotations omitted). Nor has petitioner demonstrated that failure to consider this claim would result in a "fundamental miscarriage of justice."[12] In any event, in an abundance of caution, the Court has analyzed the merits of these claims and determined, even assuming *arguendo* that there is no procedural bar, petitioner's claims fail on the merits, as discussed *infra*.

---

[10] Respondent argues that petitioner's fourth claim of judicial bias should also be found procedurally defaulted as consistent with the "state procedural rule of preservation upon which the Appellate Division clearly relied . . . ." (Respondent's Memorandum of Law, at 15.) Notably, however, the Appellate Division's opinion makes no mention of a procedural basis for denial of this claim. Quite the contrary, the Appellate Division seems to have considered this claim to be "without merit." *See People v. Celleri*, 29 A.D.3d 707, 709 (N.Y. App. Div. 2006). When a state court has reached the merits of a federal claim, there is no procedural bar on habeas review unless the court explicitly invokes a state procedural rule as a separate and alternative basis for its decision. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989). Here, since no procedural grounds are explicitly given, the Court finds petitioner's fourth claim reviewable by this Court.

[11] The prejudice suffered is explored further in discussion of the merits *infra*.

[12] This is more thoroughly addressed in discussion of the merits, as outlined *infra*.

C. Petitioner's Claims

1. Self-Incrimination

Petitioner argues that his Fifth Amendment right against self-incrimination was violated when the trial court failed to suppress statements obtained through *Miranda* violations and physical force. While in custody for the rape of the complainant, petitioner made several inculpatory statements to Detective Rodriguez at the police precinct during a twenty to twenty-five minute one-on-one conversation, which began at around 11:00 a.m. These statements were ruled inadmissible by the trial court because petitioner had not yet received his *Miranda* warnings. Petitioner alleges that at some time between 11:00 a.m. and 11:15 a.m., the detective subjected petitioner to physical coercive force while they were alone in the interrogation room. According to petitioner, at about 11:35 a.m., the detective did advise petitioner of his *Miranda* rights, whereupon petitioner offered his waiver of the same, but only as a result of the earlier coercive force. Petitioner then proceeded to make additional inculpatory statements to the detective.[13] At the pre-trial *Huntley* hearing, petitioner argued that these later statements should also be suppressed and were highly prejudicial. The trial court disagreed and ruled them admissible. Nonetheless, on direct appeal, the Appellate Division agreed with the petitioner's self-incrimination claim, ruling that petitioner's statements were improperly

---

[13] Petitioner admitted, after receiving his *Miranda* warnings, that: (1) he knew that the complainant had been alone the morning of December 13, 2001; (2) he opened her apartment door with his key; (3) he could not control himself; (4) he hit and scratched her while having sex; and (5) she had screamed for help. (T.(4) at 454-57.)

admitted on the sole grounds of improper Mirandizing as defined by New York's *Chapple* case. However, because the Appellate Division found the mistake to be "harmless error," it concluded that reversal of the conviction was unwarranted. *Celleri*, 29 A.D.3d at 708. Petitioner now contends that the trial court's admission of inculpatory statements was both improper and *not* harmless error. Moreover, petitioner asks this Court to recognize his physical coercion as the correct basis by which to review the trial court's error. As set forth below, the Court finds no merit to this claim for the following reasons. First, petitioner's *Miranda* violations infringed only on state constitutional law and were insufficient to invade his federal constitutional right against self-incrimination. Second, the *Brecht* standard of harmless error review applies regardless of whether petitioner's rights were violated due to *Miranda* violations or physical coercion. Thus, even assuming *arguendo* that petitioner's constitutional rights had been violated, under the *Brecht* standard of review, petitioner's claim warrants no relief.

The Fifth Amendment provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has declared that the privilege against self-incrimination is "an important advance in the development of our liberty – 'one of the great landmarks in man's struggle to make himself civilized.'" *Ullman v. United States*, 350 U.S. 422, 426 (1956). Indeed, the Fifth Amendment "reflects many of our fundamental values and most noble aspirations." *Murphy v. Waterfront Comm. of N.Y. Harbor*, 378 U.S. 52, 55 (1964), *overruled on other grounds by United States v. Balsys*, 524 U.S. 666 (1998). Thus, the rights inherent in the Fifth Amendment "must

be accorded liberal construction in favor of the right [the Fifth Amendment] was intended to secure." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). To that end, the Supreme Court established "*Miranda* warnings" as procedural safeguards to be offered a person in police custody, for the purpose of establishing a presumption that any subsequent statements were voluntary and free. *See generally Miranda v. Arizona*, 384 U.S. 436 (1966). The *Miranda* safeguards are "not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker*, 417 U.S. 433, 444 (1974). *Miranda* warnings do not function to bar all confessions made by un-Mirandized defendants. For *Miranda* to be triggered, a defendant must be subjected to custodial interrogation. Outside of that setting, "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected . . . ." *Miranda*, 384 U.S. at 478.

When an initial confession is improperly obtained without the requisite *Miranda* warnings, a subsequent confession obtained after proper warnings is not necessarily precluded from admission. *See Oregon v. Elstad*, 470 U.S. 298, 318 (1985). Notably, federal and New York constitutional law diverge in their criteria for proper admission of such post-warning statements. The United States Supreme Court has held that "[i]t is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate

period." *Id.* at 309. According to *Elstad*, "a careful and thorough administration of *Miranda* warnings serves to cure the condition that rendered the unwarned statement inadmissible. The warning conveys the relevant information and thereafter the suspect's choice whether to exercise his privilege to remain silent should ordinarily be viewed as an 'act of free will.'" *Id.* at 310-11. Thus, the admissibility of post-Mirandized statements "turns . . . solely on whether [they are] knowingly and voluntarily made," *id.* at 309, and if such is the case, a pronounced break in questioning is not required by the Fifth Amendment.

In contrast, under state law, the New York Court of Appeals held in *Chapple* that a "definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning" is necessary for admission of subsequent Mirandized statements even if made knowingly and voluntarily. *People v. Chapple*, 38 N.Y.2d 112, 115 (N.Y. 1975). In this respect, New York's *Chapple* rule affords protections beyond those required by federal constitutional law as explicated in *Elstad*. In *People v. Bethea*, 67 N.Y.2d 364 (N.Y. 1986) (per curiam), the Court of Appeals explicitly confirmed that Article I, Section 5 of the New York Constitution exceeded the demands of *Elstad*, and that *Chapple* properly articulated a state constitutional right against self-incrimination. In *Tankleff*, the Second Circuit also recognized this variance between federal and state law. *Tankleff v. Senkowski*, 135 F.3d 235, 246 (2d Cir. 1998).[14]

For these reasons, petitioner's *Miranda* violation claim fails to raise an issue of federal constitutional law. *Elstad* clearly permits the admission of petitioner's post-Mirandized statements. First, petitioner made them knowingly. Petitioner was given a "careful and thorough administration of *Miranda* warnings" on three separate occasions in two different languages. (H.(2) at 39-51; T.(4) at 437-38, 441-52, 558.) He not only received oral notice of his rights but also wrote his initials by each of the warnings as they were read to him. (T.(4) at 450-54.) Second, the evidence also indicates that petitioner made the post-Mirandized statements voluntarily.

While the "ultimate issue of voluntariness [of a confession] is a legal question requiring independent federal determination," *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997) (citing *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991)), the factual questions underlying a legal determination are entitled to a statutory presumption of correctness. *Nelson*, 121 F.3d at 833; 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct").

---

[14] "We note that the state courts . . . failed to distinguish between [petitioner's pre-Mirandized and post-Mirandized] confessions because the New York Court of Appeals has declined on state constitutional grounds to follow the rule of *Oregon v. Elstad* . . . . It might appear – given the state court holdings rejecting *Elstad* and given our decision that Tankleff was in custody, thereby making his 'first' confession inadmissible under *Miranda* – that we should also deem his second confession to be excludable. But *we* can only grant habeas relief based on violations of *federal* right. Thus, it is not for us to say whether Tankleff might or might not have any claim based on state constitutional law as a result of our holding that Tankleff was, under *Miranda* and its federal progeny, in custody at the time of his 'first' confession." *Tankleff v. Senkowski*, 135 F.3d 235, 246 (2d Cir. 1998) (citations omitted) (emphasis in original).

Such underlying facts involve those that are "historical, that is, recitals of external events and the credibility of the witnesses narrating them." *Nelson*, 121 F.3d at 833 (citation and internal quotation omitted). In order for a habeas petitioner to overcome this statutory presumption, the petitioner carries the burden of rebuttal with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).[15] Moreover, habeas relief may only be granted if the resulting decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Here, petitioner claims that his confession was involuntary because he was subjected to physical coercive force while alone with Detective Rodriguez between 11:00 and 11:15 a.m. Petitioner notes that several officers testified that no marks were visible on petitioner's neck previous to his meeting with Detective Rodriguez, but that later, after petitioner had undressed and removed his gold chains, marks were indeed observed by several officers on petitioner's chest and on the right and back of his neck. However, the record reveals that none of the officers had been in a position to see the marks prior to petitioner's meeting with Detective Rodriguez, either due to the brevity of the officers' encounters or the angle of their perspectives. (T.(3) at 140, 164-70, 178-81; T.(4) at 7-8, 12, 121-23, 125-26, 142-43, 172, 413-14, 509.) Ultimately, neither the trial court nor the Appellate Division found petitioner's claims of physical coercion to be credible. At the *Huntley* hearing where this factual issue was first determined, petitioner received every opportunity to develop the record in his defense and raised no objections therein. Notably, petitioner opted not to testify at the hearing.

Petitioner now fails to present this Court with the necessary "clear and convincing evidence" to rebut the presumption of correctness that it accords the trial court's factual determination that no physical coercive force was imposed on petitioner during his custody. Moreover, the Court finds that the trial court's determination in this regard was indeed "reasonable," based on the evidence presented. Thus, after a careful review of the record, the Court concludes that there is no basis to disturb the state court's finding that petitioner's post-Mirandized statements were "knowingly and voluntarily" made. Thus, under *Elstad*, the admission of the post-Mirandized statements did not violate the petitioner's Fifth Amendment rights.

Even assuming *arguendo* that petitioner's later statements were, in fact, the result of improper police coercion, petitioner's claim would still fail. Whether petitioner's post-Mirandized statements were improperly admitted due to *Miranda*-related deficiencies

---

[15] The 1994 text of § 2254(d) enumerates several circumstances that may permit a reviewing federal court to set aside the presumption of correctness of a state court's factual determinations: for example, if "the material facts were not adequately developed at the State court hearing," 28 U.S.C. § 2254(d)(3) (1994), or "the District Court finds that the factual determination [was] not fairly supported by the record . . . ." *Nelson*, 121 F.3d at 833 (referring to 28 U.S.C. § 2254 (d)(8) (1994)). However, the Second Circuit has recognized that, through the 1996 AEDPA amendments, "Congress eliminated the list of circumstances under which the presumption will be rebutted, and instead simply provided that the petitioner 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Id.* at 833 n.4. (quoting 28 U.S.C. § 2254(e)(1)) (citations omitted).

or physical coercive force, the same harmless error review would apply in either case, resulting in identical outcomes. The United States Supreme Court has held "that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state court criminal trial under the . . . standard set forth in *Brecht* . . . , whether or not the state appellate court recognized the error and reviewed it for harmlessness [under the *Chapman* standard]." *Fry v. Pliler*, 551 U.S. 112, 127 S. Ct. 2321, 2328 (2007). Under *Chapman*, the state is required to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967). The more stringent *Brecht* standard, applicable to collateral review of state court error, asks "whether the error 'had a substantial and injurious effect or influence in determining the jury's verdict[,]'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)), and shifts the burden of proof from the state to the petitioner. *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). Petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637 (citing *United States v. Lane*, 474 U.S. 438, 449 (1986)). Thus, "[h]abeas relief is not appropriate when there is merely a 'reasonable possibility' that trial error contributed to the verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994) (citing *Brecht*, 507 U.S. at 637).

Here, the overwhelming evidence of petitioner's guilt renders any improper admission of petitioner's statements harmless error under *Brecht*. First, the complainant reported the petitioner's rape shortly after he left her room. (T.(1) at 90; T.(3) at 48-51.) Second, forensic evidence located the

petitioner's DNA-matched sperm, semen, and saliva on the complainant's body and bedding, with the complainant's DNA likewise found on petitioner's boxer shorts.[16] Third, the medical evidence documenting the complainant's injuries was detailed and extensive and included injury to her face, neck and genitals.[17] In sum, the evidence, as a whole, was irreconcilable with petitioner's theory of consensual sex. As a result, the Court does not consider petitioner's inculpatory statements, even if improperly admitted, to have had a substantial and injurious effect or influence in the jury verdict. *See, e.g., Nova v. Bartlett*, 211 F.3d 705, 709 (2d Cir. 2000).

In sum, petitioner's self-incrimination claim is denied on the merits because it fails to demonstrate a violation of federal constitutional law. Furthermore, even assuming petitioner's allegations of physical coercive force were true, the Court finds that any violation would constitute harmless error under the applicable *Brecht* standard.

### 2. *Sandoval* Claim

Petitioner argues that the trial court improperly allowed an inquiry into his prior criminal record for purposes of impeachment, thereby deterring petitioner from testifying at trial. Prior to trial, the trial judge held a *Sandoval* hearing to determine whether the probative value of petitioner's prior criminal conduct, as it related to witness credibility, was outweighed by the risk of unfair prejudice. The criminal convictions at issue included three instances of criminal contempt for violating protective orders issued for his

---

[16] *See supra* Section I(B)(1).

[17] *See supra* Section I(B)(1).

wife and ex-girlfriend and one instance of reckless endangerment against his wife.[18] The trial court ruled these convictions admissible for purposes of impeachment should petitioner testify. Based on the adverse outcome of the proceeding, petitioner elected not to testify at trial. As set forth below, the Court finds this claim does not provide a basis for *habeas* relief under the circumstances of this case.

A *Sandoval* ruling is a matter of state law regarding the admissibility of a defendant's prior criminal conduct. Its purpose is to provide the defendant with a prospective ruling on the possible use of the defendant's prior bad acts by the prosecution for the purpose of impeachment. *See, e.g., Miller v. Portuondo*, 151 F. Supp. 2d 245 (E.D.N.Y. 2001) (citing *People v. Sandoval*, 34 N.Y.2d 371, 372 (N.Y. 1974)). In conducting federal habeas review, "'[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where [the] petitioner can show that the error deprived [him] of a *fundamentally fair* trial.'" *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (quoting *Taylor v. Curry,* 708 F.2d 836, 891 (2d Cir. 1983) (emphasis in original) (citations omitted)). Only then does an improper evidentiary ruling reach the level of constitutional violation sufficient to trigger a federal court's habeas review of a state court conviction. *Cupp v. Naughten*, 414 U.S. 141, 146 (1973); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (stating that "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States"); *Mapp v. Warden N.Y.*

*State Corr. Inst.*, 531 F.2d 1167, 1173 (2d Cir. 1976).

Moreover, it is well settled that there is no habeas relief for improper *Sandoval* decisions where the petitioner elected not to testify at trial. *See Peterson v. LeFevre*, 753 F. Supp. 518, 521 (S.D.N.Y. 1991), *aff'd mem.*, 940 F.2d 649 (2d Cir. 1991) ("It is well-settled that a petitioner's failure to testify is fatal to any claims of constitutional deprivation arising out of a *Sandoval* type ruling . . . ."); *see also Warren v. Miller*, 78 F. Supp. 2d 120, 135 (E.D.N.Y. 2000) ("Importantly, where as here, a habeas petitioner did not testify at trial, the *Sandoval* ruling may not be assessed on habeas review because any such ruling would be wholly speculative."). In the instant case, given that petitioner did not testify at trial, the court is left with only a speculative basis by which to review this claim. Accordingly, any *Sandoval* error under such circumstances does not provide a basis for habeas relief.[19]

---

[19] In any event, the Court concludes that the trial court's *Sandoval* ruling was consistent with both state and federal law. The Court of Appeals of New York has clearly stated that any prior commission of a crime which shows "[a] demonstrated determination deliberately to further self-interest at the expense of society or in derogation of the interests of others goes to the heart of honesty and integrity" and is, thus, probative to credibility. *Sandoval*, 34 N.Y.2d at 377; *see also People v. Williams*, 681 N.Y.S.2d 150, 152 (N.Y. App. Div. 1998) ("County Court properly found that defendant's two prior felony convictions and two violations of orders of protection manifested a willingness and disposition to place the advancement of his self-interest ahead of the interests of society and was highly probative with regard to the issue of credibility[.]"). Under the circumstances of this case, this Court finds no error under state law, and

---

[18] *See supra* Section I(A).

### 3. Confrontation Claim

Petitioner argues that he was denied his Sixth Amendment right to confront his accuser because he was prohibited from cross-examining the complainant about her alleged social relationships with other men, sexual history, and past abortion. As set forth below, the Court finds this claim to be without merit, in addition to being procedurally barred as discussed above.

Petitioner claims he was deprived of his confrontation right because defense counsel was thwarted from conducting an inquiry that might have established that the complainant was not a virgin and that she had undergone a prior abortion. Petitioner argues that both of these propositions were relevant to contradict the prosecution's assertion to the jury, in his opening statements and direct examination of witnesses, that the complainant had never before engaged in sexual intercourse. However, the trial record indicates that defense counsel never posed any questions regarding the complainant's sexual relationships with other men or past abortion during her cross-examination. On one instance at best, defense counsel intimated a social relationship between the complainant and her work supervisor.[20] The prosecution objected successfully, and the petitioner did not challenge the ruling.

"The confrontation clause of the sixth amendment guarantees a criminal defendant the right to cross-examine witnesses against him." *Dunbar v. Harris*, 612 F.2d 690, 692 (2d Cir. 1979) (citing *Davis v. Alaska*, 415 U.S. 308, 315 (1974)). "The right of cross-examination, though not absolute, is one of the most firmly established principles under Supreme Court law." *Cotto v. Herbet*, 331 F.3d 217, 248 (2d Cir. 2003). A violation of the Confrontation Clause occurs when a defendant is "prohibited from engaging in otherwise appropriate cross-examination designed . . . to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." *Delaware v. Van Arsdall*, 475

---

certainly no constitutional error under federal law, in the trial court's admission of these convictions for impeachment purposes.

[20]

Q: In fact, Jose Sanchez was your boss [at Compare Foods Supermarket], wasn't he?
A: Yes.
Q: And he hired you, did he not?
A: Yes.
Q: And you used to see Jose Sanchez at night, did you not?
A: In the evening?

Q: Yes.

. . .

A: At work.
Q: Did you see him socially, go out with him at 10:00 at night and return at one or two in the morning?

. . .

A: No.
Q: You never did that?
A: No, never.
Q: He never picked you up in a white Mercedes at 10:00 at night?
MS. BROSCO: I'm going to object, your Honor.
THE COURT: Sustained. She said no. Next question.
Q: And how long did you work at Compare?"

(T.(1) at 133-34.)

U.S. 673, 680 (1986) (quotations omitted). While the Sixth Amendment provides "an *opportunity* for effective cross-examination," it does not guarantee "cross examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (emphasis in original). States may promulgate evidentiary restrictions that "are to be voided only if they are 'arbitrary or disproportionate to the purposes they are designed to serve[.]'" *People v. Williams*, 81 N.Y.2d 303, 313 (1993) (quoting *Rock v Arkansas*, 483 U.S. 44, 56 (1987)). "Insofar as rape shield laws are concerned, the Supreme Court has recognized that they express the States' legitimate interest in giving rape victims 'heightened protection against surprise, harassment, and unnecessary invasion of privacy[.]" *Williams*, 81 N.Y.2d at 313 (quoting *Michigan v Lucas*, 500 U.S. 145, 150 (1991)); *see also Agard v. Portuondo*, 117 F.3d 696, 705 (2d Cir. 1997), *rev'd on other grounds by* 529 U.S. 61 (2000).

New York Criminal Procedural Law § 60.42 bars the admission of evidence relating to a complainant's past sexual conduct in sex offense cases unless one of five statutory exceptions applies.[21] None of these exceptions would have permitted petitioner's inquiry into the complainant's social relationships with other men. Petitioner suggests that Section 60.42's third exception, covering "[evidence that] rebuts evidence introduced by the people of the victim's failure to engage in sexual intercourse, oral sexual conduct, anal sexual conduct or sexual contact during a given period of time," N.Y. C.L.S. C.P.L. § 60.42(3), was applicable to petitioner's case. In particular, the contention is that, because the prosecutor initiated discussion of complainant's sexual history through assertions of her virginity to the jury,[22] Section 60.42(3) allowed petitioner to

---

[21]

60.42 Rules of evidence; admissibility of evidence of victim's sexual conduct in sex offense cases.

Evidence of a victim's sexual conduct shall not be admissible in a prosecution for an offense or an attempt to commit an offense defined in article one hundred thirty of the penal law unless such evidence:

1. proves or tends to prove specific instances of the victim's prior sexual conduct with the accused; or

2. proves or tends to prove that the victim has been convicted of an offense under section 230.00 of the penal law within three years prior to the sex offense which is the subject of the prosecution; or

3. rebuts evidence introduced by the people of the victim's failure to engage in sexual intercourse, deviate sexual intercourse or sexual contact during a given period of time; or

4. rebuts evidence introduced by the people which proves or tends to prove that the accused is the cause of pregnancy or disease of the victim, or the source of semen found in the victim; or

5. is determined by the court after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice.

N.Y. C.L.S. C.P.L. § 60.42

[22] (1) During prosecutor's opening statement: "As Andrea Rodriguez was enduring this rape, the defendant continued to do this. The defendant continued making a motion back and forth. Andrea Rodriguez had never had sex before. This

controvert that assertion with evidence of complainant's prior sexual history with other men and an alleged abortion.[23] Nevertheless, since the record fails to demonstrate that

_____

was the first time she ever had sexual intercourse." (T.(1) at 26.)

(2) During prosecutor's direct of the complainant: "Q: Andrea, had you ever had sex, having someone put their penis in your vagina, before this moment? A: No." (T.(1) at 83.)

(3) During prosecutor's direct of the examining nurse:

Q: When you took the medical history from her, did you ask her about her prior sexual activity?
A: Yes, I did.
Q: And why was that?
A: Because we do a pregnancy test and I need to find out if she's sexually active and on birth control, and I need to find out if she had sex within the past seventy-two hours with someone else because there may be more specimens that I'm collecting or I may need to let the crime lab know there may be more than one specimen.
Q: What was her response when you asked her about that prior sexual activity?

ABBATE: Objection, hearsay.
COURT: Overruled.
A: She stated she has never been sexually active.

(T.(4) at 193-94.)

[23] Respondent argues that discussion of complainant's virginity was warranted in light of petitioner's claim of a prior secret relationship with the complainant. However, petitioner's claim of a secret relationship with the complainant does not necessarily entail that the relationship was a sexual one. Thus, the Court does not consider petitioner's claim to have necessarily placed the complainant's virginity in contention.

petitioner actually attempted to cross-examine the complainant about any subject matter within this exception, petitioner can not now claim he was denied what was never withheld.

In sum, in addition to being procedurally barred, this claim is without merit. The Court further concludes that, even if the trial court had violated petitioner's confrontation right by restricting his cross-examination of the complainant, the error was harmless under *Brecht*.[24] Due to the overwhelming evidence of petitioner's guilt and the non-probative value of the complainant's purported "unchastity" in determining whether petitioner had raped her, the Court is convinced that the jury's verdict would have remained unchanged even had the inquiry proceeded along petitioner's alleged intentions.

### 4. Judicial Intervention/Bias Claim

Petitioner claims that the trial judge's biased treatment of defense counsel before the jury deprived petitioner of his fundamental right to a fair trial. Petitioner alleges that the judge made numerous sarcastic remarks when overruling defense counsel's objections,[25] unfairly ruled on objections to defense

_____

[24] Violations of the Confrontation Right are subject to the *Brecht* harmless error standard on habeas review. *See, e.g., Timberlake v. Taylor*, No. 04 Civ. 2846, 2008 U.S. Dist. LEXIS 22580, at *10 (S.D.N.Y. Mar. 20, 2008).

[25] "THE COURT: Look, if she sees somebody going into the room, the fact that she is not in the room, I think it is safe to assume she knows who was there. The objection is overruled." (*See, e.g.,* Petitioner's Memorandum of Law, at 12 (no further citation to the record offered).)

counsel's detriment,[26] and disparaged defense counsel before the jury by questioning her credibility.[27] Responding primarily to the latter occurrence, petitioner made a motion for a mistrial and recusal,[28] but the motion was denied. Petitioner also alleges that the trial judge repeatedly sustained unfounded objections by the prosecution and assumed an apologetic tone when he did overrule them. As set forth below, the Court finds this claim to be without merit.

As a threshold matter, petitioner appears to argue both excessive judicial intervention and judicial bias as bases for this due process claim. Under federal habeas review, a petitioner faces a high hurdle in demonstrating he was constitutionally deprived of a fair trial because of biased treatment by a state trial judge. Although "prejudicial intervention by a trial judge could so fundamentally impair the fairness of a criminal trial as to violate the Due Process Clause," *Daye v. Attorney General*, 712 F.2d 1566, 1570 (2d Cir. 1983), *cert. denied*, 464 U.S. 1048 (1984), "a federal [habeas] court will not lightly intervene when such a claim is asserted." *Gayle v. Scully*, 779 F.2d 802, 806 (2d Cir. 1985). The "trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either [1] impaired functioning of the jury or [2] lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits." *Daye*, 712 F.2d at 1572. In determining either, both the quantity and significance of the statements ought to be weighed. *Id.* (referring to the "quantity and nature of the trial judge's questioning").

The Second Circuit has acknowledged that the standard for determining when exactly a state judge engages in impermissible intervention is "'somewhat ill-defined.'" *Gayle*, 779 F.2d at 806 (quoting *Johnson v. Scully*, 727 F.2d 222, 226 (2d Cir. 1984)). However, case law regarding review of judicial intervention claims in federal criminal trials provides useful guidance here. In reviewing a federal judge's conduct, the

---

[26] In overruling defense counsel's objection to strike adverse testimony, the Court stated: "this is not the shirt that [the defendant] used when he raped the victim." (T.(4) at 503.)

[27]

    [PROSECUTION]: Objection, your Honor.
    THE COURT: Sustained. The –
    [DEFENSE]: Did you –
    THE COURT. Sustained. Hold it. Hold it. Hold it. You couldn't hear me speaking?
    [DEFENSE]: I'm sorry. I didn't hear you, Judge.
    THE COURT: Wow. Wow. I forgot what I was going to say, I was so distracted by you. You're just talking right over me.

(T.(4) at 374.)

[28]

    Judge, I have a motion for a mistrial and for a recusal of this Court in this case based upon the comments of the Judge this morning as well as the entire trial and the treatment of defense counsel therein . . . . [T]he Court, in making its comments, not only indicated that the Court did not believe me, but pitted me against the jury in the context of saying, "Well, I'm sure the jury heard me." I think that there can be no curative instruction sufficient to overcome that. My credibility is of paramount importance in terms of summation. This is a case where credibility is the issue, and there is no way of overcoming what the Court said in front of the jury in expressing at least twice that it did not believe me.

(T.(4) at 384-85.)

Second Circuit has made clear that the "judge's behavior [must be] so prejudicial that it denied [petitioner] a fair, as opposed to a perfect, trial." *United States v. Robinson*, 635 F.2d 981, 984 (2d Cir. 1980), *cert. denied*, 451 U.S. 992 (1981). The issue is not one of "whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid." *United States v. Pisani*, 773 F.2d 397, 402 (2d Cir. 1985). "The test is whether the jury was so impressed with the judge's partiality to the prosecution that it became a factor in determining the defendant's guilt, or whether 'it appeared clear to the jury that the court believed the accused was guilty.'" *United States v. Amiel*, 95 F.3d 135, 146 (2d Cir. 1996) (quoting *United States v. Nazzaro*, 472 F.2d 302, 303 (2d Cir. 1973)).

In conducting its review, a court "must make 'an examination of the entire record,' in order to determine whether the defendant received a fair trial." *United States v. Mickens*, 926 F.2d 1323, 1327 (2d Cir. 1991) (quoting *United States v. Bejasa*, 904 F.2d 137, 141 (2d Cir. 1990)). It would be improper for the judge's statements to be "judged in isolation from the totality of the record through the dispassionate looking glass of hindsight . . . ." *Bejasa*, 904 F.2d at 141. By placing the individual statements in the context of the entire record, certain factors may be found to have mitigated their prejudicial effect. *See Martinez v. Kelly*, No. 01 Civ. 11570, 2005 U.S. Dist. LEXIS 42952, at *17 (S.D.N.Y. Aug. 4, 2005). For example, "a trial court's negative comments to or about defense counsel are typically not viewed as compromising the fairness of a trial where they were *provoked* by defense counsel himself." *Id.* (emphasis added); *see also Mickens*, 926 F.2d at 1327. "In addition, the prejudicial effect of a trial court's comments 'can be cured by the court's cautionary

instruction' to the jury."[29]

---

[29] The jury instruction in *United States v. Mickens*, 926 F.2d 1323, 1328 (2d Cir. 1991) was as follows:

> During the course of the trial, I have had to admonish or reprimand attorneys on both sides of the case because I did not believe that what one or more of them was doing was proper. You should draw no inference against an attorney or his or her client . . . . It is irrelevant whether you like a lawyer or whether you believe I like a lawyer. The issue before you is not which attorney is more likeable or the better attorney. The issue is whether or not the government has sustained its burden of proof. The fact that the court has asked one or more questions of a witness for clarification or admissibility of evidence purposes is not to be taken by you in any way as indicating that the court has any opinion as to the guilt or lack thereof of a defendant in this case, and you are to draw no such inference therefrom. That determination is up to you, and you alone, based on all of the facts in this case and the applicable law in these instructions.

In addition, the jury instruction in *United States v. Bejasa*, 904 F.2d 137, 141 (2d Cir. 1990) was as follows:

> I have sought to avoid any comments which might suggest that I have personal views on the evidence or that I have any opinion as to the guilt or innocence of this defendant. You are not to assume that I have any such feelings or opinions. This charge is given to you solely to instruct you as to the applicable law in this case. The actions of the judge during the trial in granting or denying motions or ruling on objections by counsel or in statements to counsel or in attempting to clearly set forth the law in these instructions are not to be taken by you as any indication of any determination of the

*Martinez*, 2005 U.S. Dist. LEXIS 42952, at *17 (quoting *Mickens*, 926 F.2d at 1327-28). In sum, the reviewing court should embark on a holistic evaluation "requir[ing] a close scrutiny of each tile in the mosaic of the trial so that [it] can determine whether instances of improper behavior or bias, when considered individually or taken as a whole, may have reached the point where [it] can make a safe judgment that the defendant was deprived of the fair trial to which he is entitled." *United States v. Nazzaro*, 472 F.2d 302, 304 (2d Cir. 1973).

In the instant case, the state judge presided over petitioner's trial in an active manner. However, although certain comments might be considered aggressive, the Court does not find that they either conveyed a partiality to the jury that would have factored into its determination of petitioner's guilt, or expressed a bias which undermined the appearance of a fair trial. First, as the record reveals, the judge was, in fact, equally aggressive in his treatment toward the prosecutor and defense counsel. He showed no reluctance in overruling the prosecutor's objections a number of times (*See* T.(1) at 37, 40, 105, 139, 146-47; T.(2) at 11, 15-16, 80; T.(4) at 253), even doing so in the same alleged sarcastic manner that petitioner argued he exhibited towards defense counsel.[30]

Conversely, defense counsel's own objections were upheld repeatedly, (T.(1) at 94; T.(2) at 104; T.(4) at 241), and, in one instance, upheld quite firmly over prosecutor's expressed disagreement.[31] In other instances, the judge allowed defense counsel considerable leeway in her cross-examination of witnesses, (T.(2) at 16, 80; T.(4) at 164), and issued pointed directives at the prosecutor. (T.(3) at 50, 103.)

Second, many of the trial judge's statements, of which petitioner complains, could be reasonably interpreted as warranted under the circumstances and/or provoked by defense counsel's conduct. For example, the trial judge stated, "[y]ou're just talking right over me,"[32] after defense counsel failed to respond to his ruling and instruction, a failure which had occurred several times previously. (T.(1) at 162, 168; T.(3) at 52; T.(4) at 567.) Regarding the judge's decision to allow the phrase "raped the victim"[33] into the record, defense counsel left uncontested the judge's observation that, by this point in the trial, the jury understood it was the entity tasked with determining whether a rape had in fact occurred. Defense counsel even subsequently withdrew her objection. (T.(4) at 503-04.)

---

(T.(3) at 183-84.)

> [DEFENSE]: Objection.
> THE COURT: I will sustain it here.
> [PROSECUTION]: Your Honor, may I be heard at sidebar? It's an outcry.
> THE COURT: I know. I sustained it. Go ahead.

(T.(3) at 50.)

[31] *See supra* n.30.

[32] *See supra* n.27.

[33] *See supra* n.26.

---

issues of fact. These matters, the actions of the court, relate to procedure and law. You, the members of the jury, determine the facts.

[30]

> THE COURT: [In the] very narrow issue before us here, Ms. Abbate objected to the fact that you were trying to put in this form without being the original and she clearly has a right to object, and I sustained the objection. If you can put it in through someone else, that's fine, be my guest."

Finally, the trial judge's instructions to the jury, both at the beginning and end of trial, emphasized that: (1) the fact-finding role was its alone;[34] (2) the judge had no opinion about the case;[35] (3) the jury must make its decision solely on the trial's evidence;[36] (4) the assessment of witness credibility was not within the judge's authority;[37] and (5) every conflicting inference of guilt or innocence was to be resolved in defendant's favor.[38] The Court finds the jury instructions of this case sufficiently curative of whatever potential effect the allegedly biased statements at issue may have had on petitioner's trial. *See, e.g., United States v. Tito*, No. 08-1193-cr, 2009 WL 535970, at *1 (2d Cir. Mar. 3, 2009) (summary order) ("In the context of the entire record, including these proper jury instructions, the three interruptions [defendant] identifies do not evince such prejudice against the defense that [defendant] was deprived of a fair trial."). Thus, the

petitioner's judicial intervention claim is without merit.[39]

In short, the Court finds that the trial judge committed no error tantamount to a constitutional violation of defendant's due process right to a fair trial. Therefore, petitioner's claim therein is denied. The Court also observes that had the trial judge's interventions amounted to constitutional error, the violation would be subject to harmless error review under *Brecht*.[40] Based on the overwhelming evidence of defendant's

---

[34] "You are the finders of fact. That's your function and yours alone." (T.(4) at 821.)

[35] "I stress that it's your verdict. I, the court, have no opinion whatsoever in this case." (T.(4) at 822.)

[36] "Remember that in determining what the facts are, I charge you not to wonder about things which are not in evidence. Make your decision based solely on the evidence." (T.(4) at 822.)

[37] "I cannot tell you how to evaluate a witness' testimony." (T.(4) at 831.)

[38] "I charge you to remember that a defendant is entitled to every inference in his favor which reasonably can be drawn from the evidence. If two inferences may be drawn from the same evidence and one is consistent with guilt and one is consistent with lack of guilt, the defendant is entitled to the inference consistent with lack of guilt." (T.(4) at 825-26.)

[39] To the extent petitioner also argues this as a judicial bias claim, it is rejected for the same reasons outlined above with respect to the judicial intervention claim. "The Supreme Court held in *Liteky v. United States* that judicial rulings and judicial remarks during the course of a trial that are disapproving of, or even hostile to, counsel, the parties, or their cases do not support a claim of bias or partiality unless they reveal 'such a high degree of favoritism or antagonism as to make fair judgment impossible.'" *Francolino v. Kuhlman*, 365 F.3d 137, 143 (2d. Cir. 2004) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). "'[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display' do not establish judicial bias or partiality." *Francolino*, 365 F.3d at 143-44 (quoting *Liteky*, 510 U.S. at 555-56). There is nothing in the record to support a claim of judicial bias.

[40] *Brecht* applies to constitutional violations resulting from "trial errors" as compared to "structural errors," with improper judicial intervention best categorized under the former, as it "occur[s] during the presentation of the case to the jury and, as such, may be quantitatively assessed in the context of other evidence presented to determine whether it was harmless." *Bentley v. Scully*, 41 F.3d 818, 823 (2d Cir. 1994); *see also Brecht*, 507 U.S. at 629; *Arizona v. Fulminante*, 499 U.S. 279 (1991).

guilt, the jury would have found petitioner guilty regardless of any improper judicial intervention, thereby rendering his claim meritless.

### 5. Prosecutorial Misconduct Claim

Petitioner claims he was denied his right to a fair trial because the prosecutor improperly vouched for the veracity of the complainant during his summation. Petitioner draws attention to four specific comments.[41] One such comment suggested that had she planned to lie, she could have concocted a more incriminating story. (T.(4) at 810.) The Court finds this claim to be without merit as set forth below, in addition to finding it procedurally barred, as discussed above.

It is well established under New York law that a prosecutor's summation comments that the witness was credible are not considered improper vouching when offered as a fair response to attacks by the defense counsel during summation on the credibility of a prosecution witness. *See, e.g., People v. Melendez*, 815 N.Y.S.2d 551, 559 (N.Y. App. Div. 2006) ("The portions of the prosecutor's summation to which defendant objected as 'vouching' were responsive to the defense summations and fair comment based upon the evidence."); *People v. Beggs*, 796 N.Y.S.2d 826, 828 (N.Y. App. Div. 2005) ("In his summation, defense counsel commented on the credibility of the victim and her mother, and the comments of the prosecutor to which defense counsel raised an objection were directly related to those issues. Thus, the comments of the prosecutor were a fair response to the observations of defense counsel on summation and did not deprive defendant of a fair trial."), *appeal denied*, 5 N.Y.3d 803 (N.Y. 2005); *People v. Dixon*, 795 N.Y.S.2d 586, 587 (N.Y. App. Div. 2005) ("The challenged portions of the prosecutor's summation were responsive to the defense arguments, and did not . . . constitute improper vouching."), *appeal denied*, 5 N.Y.3d 827 (N.Y. 2005); *People v. Barber*, 787 N.Y.S.2d 424, 427 (N.Y. App. Div. 2004) (prosecutor's comments during summation that the victim had "no motive to lie" did not constitute improper vouching where "the defense ha[d] attacked the credibility of the prosecution witnesses in summation"), *appeal denied*, 4 N.Y.3d 796 (N.Y. 2005); *People v. Ruiz*, 778 N.Y.S.2d 559, 560 (N.Y. App. Div. 2004) ("At trial, defendant's theory of the case, emphasized during defense counsel's summation, was that the correction officer who testified to his discovery of the shank on defendant had actually fabricated the charge in an effort to frame him. In light of defendant's attempts to discredit the prosecution witnesses in this manner, the prosecution's response represented fair comment; '[f]aced with defense counsel's focused attack on [the] credibility [of the People's witnesses], the prosecutor was clearly entitled to respond by arguing that the witnesses had, in fact, been credible. An argument by counsel that his witnesses have

---

[41] (1) "Andrea Rodriguez, you saw her testify just a week ago. I submit to you that her testimony was compelling, consistent." (T.(4) at 759.)
(2) "I submit to you the credibility in this case, it's an easy call. Andrea Rodriguez, you saw her on the stand. She was crying, she appeared to be genuine, and I believe some of you jurors were also crying during her testimony because her testimony was genuine." (T.(4) at 760.)
(3) "If Andrea Rodriguez made this up, why, then, didn't she use this wonderful evidence? She could have said that he busted open the door and broken the lock. But Andrea Rodriguez, I submit to you, was telling the truth, and there's no need to make something up or exaggerate." (T.(4) at 810-11.)
(4) "And you saw her on the stand. Did she exaggerate or add to things? . . . I submit to you that her testimony, there was [sic] no exaggerations. She told us when she didn't know something." (T.(4) at 811.)

testified truthfully is not vouching for their credibility.'") (internal citations omitted), *appeal denied*, 785 N.Y.S.2d 39 (N.Y. 2004).

Moreover, as the Second Circuit has noted in the federal context, "the prosecution and defense are generally entitled to wide latitude during closing arguments so long as they do not misstate the evidence. Under the invited or fair response doctrine, the defense summation may open the door to an otherwise inadmissible prosecution rebuttal." *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998) (citing *United States v. Robinson*, 485 U.S. 25, 32 (1988)); *see also Everett v. Fischer*, No. 00 Civ. 6300, 2002 WL 1447487, at *3 (E.D.N.Y. July 3, 2002) ("[T]he prosecutor's statements that the People's witnesses could have invented a more convincing story if they had wanted to lie and that the witnesses had to face cross-examination by defense counsel were legitimate comments on the credibility of the People's witnesses, and a fair response to defense counsel's attack on the credibility of the People's witnesses in his summation."). In sum, both New York and federal law recognize as fair and proper the prosecutor's right to rebut attacks of witness credibility during summations.

In the instant case, Petitioner's counsel made several such direct attacks on the complainant's credibility during her summation:

(1) "And I'm going to suggest to you that Andrea Rodriguez is not worth your believability." (T.(4) at 707);

(2) "Would you believe somebody who looked at you under oath and lied about things that are – why lie about them? I mean, but she did." (T.(4) at 711-12);

(3) "What we have here could be termed a pathological liar. She lies about a whole bunch of things. And those are only the things we've caught her on." (T.(4) at 712-13.)

As a result, under both New York and federal law, the prosecutor was entitled to rebut defense counsel's summation with contrary assertions. Given the prosecutor made these statements in direct response to defense counsel's challenge of the complainant's credibility, the Court finds no error at trial and no constitutional violation that supports petitioner's claim. In an abundance of caution, though, the Court assumes *arguendo* that the prosecutor did improperly vouch for the veracity of the complainant and concludes, as discussed below, that habeas relief is unwarranted in the instant case.

Habeas relief is only merited for errors of constitutional dimension. A "trial error,"[42] such as prosecutorial misstatements during summations, violates a defendant's due process right to a fair trial only if the defendant "suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or

_____

[42] Under *Brecht*, constitutional errors at trial fall under two broad categories: "structural error and trial error." *Bentley v. Scully*, 41 F.3d 818, 823 n.1 (2d Cir. 1994). A structural error warrants automatic reversal of the conviction because it involves a deprivation of a constitutional protection so fundamental to a fair trial that the resulting verdict was unreliable. *Id.* A trial error, however, is "one which occurred during the presentation of the case to the jury and, as such, may be quantitatively assessed in the context of other evidence presented to determine whether it was harmless" because of its discrete and punctiliar nature. *Id.* Thus, trial errors do not constitute a *per se* violation of a defendant's fundamental right to a fair trial.

influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). This standard of collateral review, as articulated by the Supreme Court in *Brecht*, deliberately gives greater deference to state court decisions than would be the case on direct appeal. *Id.* at 824; *see also Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993) (once the "process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction and sentence."). Thus, "an error that will justify reversal on direct appeal may not necessarily support a collateral attack on a final judgment." *Brecht*, 507 U.S. at 634. This underscores the high bar a habeas petitioner must pass to succeed on a deprivation of fair trial claim for prosecutorial misstatements. Even on direct appeal, "[b]efore a conviction will be reversed, a prosecutor's comments upon summation must 'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" *United States v. Coriaty*, 300 F.3d 244, 255 (2d Cir. 2002) (quoting *Donnely v. Dechristofaro*, 417 U.S. 637, 643, 647 (1974)). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). They must represent 'egregious misconduct.'" *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974)). Not only is the habeas review standard more stringent, but the burden of proof has also been shifted from the State to the petitioner. *See Bentley*, 41 F.3d at 824.

In assessing whether "actual prejudice" has occurred, a habeas court must view the "totality of the circumstances surrounding the trial court conviction." *Id.* at 824 (citing *Samuels v. Mann*, 13 F.3d 522, 526-27 (2d Cir. 1993) and *Henry v. Speckard*, 22 F.3d 1209, 1215-16 (2d Cir. 1994)). Relevant considerations include: "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was absent the prejudicial conduct." *Bentley*, 41 F.3d at 824 (citing *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991)). "Habeas relief is not appropriate where there is merely a 'reasonable possibility' that trial error contributed to the verdict." *Bentley*, 41 F.3d at 824 (quoting *Brecht*, 507 U.S. at 637). "In addition, in determining whether a prosecutor's conduct was unconstitutional, a court 'must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's [remarks] . . . . If the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction.'" *Everett v. Fischer*, No. 00 Civ. 6300, 2002 WL 1447487, at *2 (E.D.N.Y. July 3, 2002) (quoting *United States v. Young*, 470 U.S. 1, 13-14 (1985) (alterations in original)).

The Court finds that petitioner has suffered no actual prejudice due to the conduct alleged in this claim. The severity of the prosecutor's conduct, in this case, was *de minimis*, in both quantity and significance. Petitioner's complaint encompasses no more than four discrete statements, all limited to the summation portion of the trial. The statements are each directly responsive to the defense counsel's own attacks on the complainant's credibility immediately prior in the trial. Any prejudicial impact of the statements was also neutralized by the trial judge's numerous instructions to the jury. Both before and after the summations, the trial judge explicitly instructed the jury that the lawyers' summations were not to be considered as evidence. (T.(4) at 704, 822.) He also underscored several times the prosecutor's burden of proof, (T.(4) at 826-30), including a full exposition of the "beyond a reasonable doubt" standard, (T.(4) at 828-

31), and the defendant's right to a presumption of innocence. (T.(4) at 825-26.) Finally, the Court finds that the evidence of petitioner's guilt was so overwhelming that conviction was certain absent the alleged prejudicial conduct.

In short, the Court finds the prosecutor's statement during summations clearly within the bounds of New York and federal law. Moreover, the court finds that, if any error was committed, it did not rise to the level of a constitutional violation. Petitioner's request for habeas relief based upon alleged prosecutorial misconduct is, therefore, denied, both due to the procedural bar and on the merits.

## IV. CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied in its entirety. Petitioner has failed to point to any state court ruling that was contrary to, or an unreasonable application of, clearly established federal law, or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court has reviewed all of petitioner's claims and finds them to be without merit. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:     May 6, 2009
              Central Islip, New York

* * *

Petitioner appears *pro se*. The attorney for the respondent is Marcia R. Kucera, Esq., Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, New York 11501.